IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE | : CHAPTER 13 |
| | : |
| WILLIE H. BROWN | : |
| DEBTOR(S) | : BANKRUPTCY NO. 08-13595 SR |

# SUPPLEMENTAL WRITTEN OPINION
# SUR ORDER OF NOVEMBER 19, 2008
# PURSUANT TO LOCAL BANKRUPTCY RULE 8001-1(b)

BY: STEPHEN RASLAVICH, UNITED STATES BANKRUPTCY JUDGE.

**Introduction**

This opinion is filed pursuant to Local Bankruptcy Rule 8001-1(b) for the purpose of amplifying the Court's oral bench ruling and Order of December 17, 2008.

**Background**

This is a Chapter 13 bankruptcy case commenced on June 2, 2008. The Debtor, Willie H. Brown, is represented by David A. Scholl, Esq., a bankruptcy practitioner and former Judge of this Court.

On June 13, 2008, Counsel filed a Motion pursuant to 11 U.S.C. § 522(f) seeking to avoid a judicial lien held by creditors Jay and Jenna Jutkovsky on the grounds that it impaired an exemption in realty which the Debtor had claimed. An evidentiary hearing with respect to that contested matter was held on October 1, 2008. At the conclusion of the hearing the Court issued an oral Bench ruling denying the Motion.

On October 13, 2008, a Motion to Reconsider the Order of October 1st was filed and a hearing thereon was set for November 19, 2008 at 10:00 a.m. An Answer in opposition to the

request for reconsideration was timely filed by counsel for the Jutkovskys, Jason C. Berger, Esq.

The Reconsideration Motion was called at 10:02 a.m., at which time only Mr. Berger and Mr. Brown were present. Mr. Scholl was absent and, in response to its inquiry, the Court was advised by the parties and courtroom staff that Mr. Scholl was in an adjacent courtroom where he was engaged in an evidentiary hearing on behalf of another client before Judge Diane Sigmund. No information as to an expected arrival time for Mr. Scholl was communicated to the Court.

At that juncture, Mr. Berger asked to be excused to attend a matter before Judge Jean Fitzsimon. Court was thereupon recessed (10:20 a.m.) and was reconvened at 10:44 a.m. At the request of the undersigned further attempts, consisting of dispatching an emissary to Mr. Scholl and the sending an instamessage to Judge Sigmund's audio system recorder, were made, all in an effort to ascertain Mr. Scholl's status. No reply of any kind whatsoever was received.

Faced with this conundrum, the Court, at 10:49 a.m., advised Mr. Berger and Mr. Brown that it was going to dismiss the Motion for Reconsideration, without prejudice. The Court emphasized that the dismissal was without prejudice and, should the Motion be renewed, it would be heard - subject to the condition that the fair cost of the wasted time of the Respondents' counsel be paid. Court was thereupon adjourned.

At 11:51 a.m. Mr. Scholl appeared before the Court alone and explained that he had been unfortunately detained in a hearing before Judge Sigmund that took longer than he had expected it to take. A colloquy followed in which the Court advised Mr. Scholl of what had transpired earlier that morning. Mr. Scholl stated that 1) he had informed the undersigned's courtroom deputy of the matter he had before Judge Sigmund, 2) that he always felt it was regretful when

people have to wait, but 3) he didn't know what he should have done under the circumstances.

On November 21, 2008, a Motion for Reconsideration of the Court's Order of November 19, 2008, (and, once again, the Order of October 1, 2008) was filed. A timely response in opposition to this Motion was filed on behalf of the Jutkovskys and the matter was set for hearing on December 10, 2008. That hearing was continued to December 17, 2008 by agreement of the parties.

A rather spirited colloquy took place at the hearing on December 17, 2008. The essence the Court gleaned from the remarks of Debtor's Counsel was that, in his opinion, the incident on November 19, 2008, was not his fault and that, indeed, he was blameless. He emphasized that the hearing scheduled before Judge Sigmund on the morning of November 19th had been "specially listed" by her, and that he had no choice but to appear and remain there until it concluded. He reemphasized that he had thought the hearing would be short, that he was sorry his opposing counsel had to sit idle, but that matters that day were totally within the control of Judge Sigmund.

For the reasons which follow the Court rejected this explanation and, following counsel's refusal to comply with the Court's previous condition, the Motion for Reconsideration of the Order of November 19, 2008 was denied.

**Discussion**

When considering whether to dismiss a case for failure to prosecute, courts generally consider the following factors set forth in *Poulis v. State Farm and Casualty Company*, 747 F.2d 863, 868 (3d Cir. 1984):

> (1) the extent of the party's personal responsibility*;* (2) the prejudice to the adversary caused by the failure to meet scheduling

> orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

A balancing of these factors militated in favor of dismissal of the subject motion. The Court herein will review all of the factors, albeit not in the order recited above.

### I. Prejudice

There was obviously minimal prejudice to the Respondents in this situation beyond the time wasted by their counsel in waiting for the hearing that didn't go forward. (The Court notes parenthetically, however, that this prejudice, such as it was, might have been exacerbated had the Court not dismissed the Motion when it did, since Mr. Scholl did not appear for approximately one hour thereafter.)

### II. The Meritoriousness of the Claim or Defense

This was unquestionably Counsel's weakest argument. In Mr. Scholl's view he was a powerless victim of circumstance. Yet that was clearly not the case.

Counsel acknowledged that at least a couple of days before the fact he was aware that he had a "specially listed" matter before Judge Sigmund that would definitely go forward on the morning of November 19th. (N.T. 12-17-08 at 8) He was, of course, also aware that opposition papers to the Motion pending before this Court had been filed and that that matter, too, was likely to go forward. The conflict, in other words, was readily apparent, indeed, it was practically inevitable.

Counsel has contended that the events of November 19th were the fault of the Court system, in general, or Judge Sigmund in particular. Such is not the case. While the matter which

counsel had pending before Judge Sigmund may have been "specially listed" by her, the matter pending before this Court was not "specially listed" by this Court. Indeed, it was not "listed" by this Court at all. Counsel himself "self-scheduled" the hearing on his Motion for Reconsideration pursuant to the procedures set forth in Local Bankruptcy Rule 5070-1.

With a conflict looming, counsel took no steps to secure a continuance, despite his acknowledgment that a continuance would have been readily granted had one been sought. (N.T. 12-17-08 at 8-9)

More significantly, counsel vastly exaggerated his predicament on the morning of November 19th. As the Court explained during the colloquy on December 17th, faced with the situation counsel could have, and should have, requested a brief recess from Judge Sigmund for the purpose of addressing himself to the scheduling conflict he had created.[1] Had Counsel made such a request and been refused there would have been little else to talk about. But Counsel made no such request and elected instead to keep his opponent, the Court and his own client completely in the dark as to his status. Such conduct is unprofessional and indefensible.

### III. History of Dilatoriness

Debtor's Counsel has a lengthy history of self-scheduling multiple matters at the same time. Most conflicts resolve themselves consensually and the Court, in general, has exhibited what it considers to be great patience with Counsel's habits. Here, however, there was no consensus, and hence there was an obvious problem. It is, in the opinion of the Court, simply unsatisfactory for counsel to maintain that he was at liberty to ignore the situation and not even

---

[1] Ultimately, Debtor's counsel thanked the Court for this advice and conceded that he could have, and perhaps should have, done this. (N.T. 12-17-08 at 20).

attempt communication with his adversary or the Court concerning his circumstances.

### IV. Willfulness/Bad Faith

The Court acknowledged that it did not consider Debtor's Counsel to have acted in bad faith. The Court does, however, consider Counsel's conduct to have been willful, in that counsel's conduct was conscious, voluntary and deliberate. Once again, counsel had ample opportunity beforehand to deal with an impending conflict of his own creation. He likewise had opportunity in the midst of things to act in a courteous, professional manner to deal with the circumstances. He took no action, ignoring the concerns of others, and electing to place his priorities ahead of those of anyone else.

### V. The Effectiveness of Sanctions other than Dismissal

Arguably the dispute at hand is of minor consequence, at least from an economic perspective. It was readily apparent from the colloquy at the hearing on December 17th, however, that the instant issue is a matter of significant principle insofar as Debtor's Counsel is concerned. The Court respects this. The Court is of the firm opinion, however, that counsel was in the wrong. Respondents' Counsel presented an "invoice" for his "wasted" time on the morning of November 19th in the amount of $420, being two hours at $210 per hour. The Court had estimated the time as being perhaps a couple of hours. By the conclusion of the hearing on December 17th, the Court opined that the time in question might be as little as one hour and, having examined the transcripts, even that might be on the high side. Given that the filing fee for an appeal of this Court's Order of December 17th was $255 there is clearly for Debtor's counsel something at stake here much larger than the amount in controversy.

In the opinion of the Court this matter, fundamentally, has to do with the efficient

administration of the business of the Court. Implicit, if not express, in Debtor's Counsel's remarks is his belief that, where necessary, the rules of Court and common courtesy should yield to the manner in which he has elected to conduct himself. Counsel, moreover, was clearly angry and indignant because that result did not obtain. In the course of his colloquy with this Court on December 17th, for instance, Counsel proceeded, *inter alia*, to 1) accuse the Court of personal animus against him; 2) accuse the Court of selectively singling him out for sanction; 3) raise his voice to an intemperate level (for which he apologized); 4) publicly disparage Judge Sigmund ("I can't tell when Judge Sigmund's going to end the hearing. When she ended the hearing, she went into a monologue for about a half an hour."); 5) dismiss the impact of his conduct on his opponents. ("I think that's one of the things you have to live with as a lawyer."); and 6) advise the Court that he was retiring and "getting out of it," because he had had enough of dealing with the Bankruptcy Court over the past seven or eight "unpleasant" years. (N.T. 12-17-08 at 12, 9, 16, 7, 10 and 12 respectively)

  Unanticipated delays may well be an occasional, unfortunate byproduct of the modern day practice of law. This does not, however, legitimize one behaving in a fashion which contributes to the problem rather than its solution. This is where Debtor's Counsel misses the mark. The Court took great pains during its colloquy with counsel to assure him, and it reiterates here, that there neither was nor is anything "personal" at issue here. Moreover, as discussed, the "sanction" to be imposed as a condition to reinstatement of the original Motion for Reconsideration was, by any measure, a fair and very modest one. Counsel essentially made clear, however, that <u>no</u> penalty, however modest, was acceptable to him based on his belief that he had done absolutely nothing wrong. As a consequence, the Court was constrained to

conclude that no alternative sanction short of dismissing the Motion would operate to adequately deal with the situation.

### VI. The Extent of the Party's Personal Responsibility

There is an anomaly to this factor. Obviously Mr. Brown bore no personal responsibility for Mr. Scholl's behavior. Other things being equal, therefore, this factor would weigh against dismissal of the Motion for Reconsideration. Toward the conclusion of proceedings on December 17th, however, Mr. Scholl asked for a brief recess to discuss the situation with his client, stating that "I'd certainly hate to hurt him." When Court reconvened Mr. Scholl implied that he may have paid the sanction and that he did not want to create problems for Mr. Brown since he was present on November 19th. Ultimately, though, Mr. Scholl informed the Court that he would not pay the sanction because Mr. Brown did not agree that he should; indeed, Mr. Brown apparently felt strongly that he should not pay it. (N.T. 12-17-08 at 20)

This rather odd turn of events removed Mr. Brown from the status of an innocent bystander to the affair. It is no less inappropriate for Mr. Scholl to delegate to Mr. Brown the final word on how the business of the Court should be run, than it is for this Court to delegate that matter to Mr. Scholl. By his actions, Mr. Brown implicated himself in the heart of the matter and, as a consequence, this factor likewise weighed in favor of dismissal.

### Summary

All of the *Poulis* factors weighed in favor of the Order dismissing the subject Motion for failure to prosecute, some, of course, to a greater degree than others. In a certain respect this matter, as noted, is liken to the proverbial "tempest in a teapot." At bottom, however, is the larger principle of whether an attorney can flout the rules of procedure, and conventions of

common professional courtesy, without consequence or reprimand of any kind, based on counsel's assessment of the propriety of his conduct.  The Court believes not.  The Court, needless to say, stands ready to address the merits of the underlying Motion for Reconsideration of its Order of October 1, 2008, subject to compliance with the very reasonable condition precedent it believes it has specified.

By the Court:

_____
Stephen Raslavich
Chief, United States Bankruptcy Judge

Dated:   December 30, 2008

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE | : CHAPTER 13 |
| | : |
| WILLIE H. BROWN | : |
| DEBTOR(S) | : BANKRUPTCY NO. 08-13595 SR |

# ORDER

**AND NOW**, in accordance with Local Bankruptcy Rule 8001-1(b), it is hereby:

**ORDERED,** that the Court's Order of November 19, 2008, is amplified by the attached Supplemental Written Opinion.

By the Court:

*(signed)* Stephen Raslavich

Stephen Raslavich
Chief, United States Bankruptcy Judge

Dated: <u>December 30, 2008</u>

Interested Parties:

George Conway, Esquire
Office Of The U.S. Trustee
833 Chestnut Street
Suite 500
Philadelphia PA  19106

Counsel for Debtor
David A. Scholl, Esquire
The Regional Bankruptcy Center
Law Office of David A. Scholl
#6 St. Albans Ave
Newtown Square, PA 19073

Counsel for Respondents
Jason C. Berger, Esquire
WEIR & PARTNERS LLP
The Widener Bldg.
1339 Chestnut Street
Ste 500
Philadelphia, PA 19107

Polly Langdon, Esquire
Office of Frederick J. Reigle, Esquire
Chapter 13 Trustee
2901 St. Lawrence Ave
P.O. Box 4010
Reading PA 19606